MEMORIAL HOSPITAL, Plaintiff,

v.

CARRIER CORPORATION,
Defendant/Third Party
Plaintiff,

v.

INTERNATIONAL ENVIRONMENTAL
CORPORATION, Third Party
Defendant.

**Civ. A. No. 92–4108–DES.**

United States District Court,
D. Kansas.

Feb. 23, 1994.

Joseph A. Knopp, Stites, Hill, Wilson & Knopp, Manhattan, KS, for plaintiff.

Gregory L. Musil, Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, for defendant.

Louis F. Eisenbarth, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for third-party defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on the following two motions: (1) defendant and third-party plaintiff Carrier Corporation's ("Carrier") motion for summary judgment (Doc. 56); and (2) third-party defendant International Environmental Corporation's ("International") motion for summary judgment (Doc. 58).

This is an action in which plaintiff Memorial Hospital ("Memorial") seeks damages from Carrier for alleged defects in heating, ventilating, and air conditioning equipment. Specifically, Memorial claims Carrier breached the K.S.A. 84–2–315 implied warranty of fitness for a particular purpose. Carrier seeks indemnification from International.

### II. BACKGROUND

In 1985 and 1986, Memorial conducted a renovation project in which heating, ventilating, and cooling units ("the HVAC units") were installed in certain hallways and patient rooms. The relevant entities, and their roles, are as follows: Malone, Brack & Associates ("MBA") provided Memorial with design engineering services; Powell Brothers Construction Company ("Powell Brothers") was Memorial's general contractor; the General Heating and Cooling Company ("GH & C") sold the HVAC units to Powell Brothers; Carrier provided GH & C with the HVAC units; and International manufactured the HVAC units for Carrier.

At the time Memorial took bids for the project, GH & C was a non-exclusive distributor of Carrier products. Carrier and GH & C had a distributorship agreement which provided that GH & C was not Carrier's agent. Memorial did not have a written or oral agreement with either Carrier or GH & C regarding the HVAC units.

As Memorial's design engineer, MBA prepared the design and operating specifications for the HVAC units. Powell Brothers, the mechanical contractor, selected the units to be installed. MBA approved the units which Powell Brothers selected. International manufactured these units for sale by Carrier.

Carrier provided the units to GH & C, its distributor. GH & C sold the units to Powell Brothers. Powell Brothers installed the units for Memorial.

In August of 1986, Memorial noticed the first problems with the fan coils. Memorial personnel and their design engineers held meetings in 1989 at which they discussed the problems Memorial was experiencing with fan coil units breaking. Memorial's work orders indicate that repairs were made to the units in 1988, 1989, 1991, and 1992. Powell Brothers made repairs in 1990.

Memorial's renovation project was completed in or about November of 1986. Memorial concedes that it purchased the HVAC units no later than January 1, 1987. Memorial filed this lawsuit on April 15, 1992.

### III. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Rule 56(e)).

■ Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

■ A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

■ The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## IV. *DISCUSSION*

In this action, Memorial sues Carrier for breach of the K.S.A. 84–2–315 implied warranty of fitness for a particular purpose and Carrier seeks indemnification from third-party defendant International. Carrier and International move for summary judgment.

Carrier moves for summary judgment against Memorial on the following three grounds: (1) Memorial's claim is barred by the statute of limitations; (2) Memorial's claim is barred because there is no privity of contract between Memorial and Carrier; and (3) Memorial is not the real party in interest.

International moves for summary judgment against Carrier on the following grounds: (1) the contract between International and Carrier preempts common law indemnification; and (2) Carrier's claim is barred by the statute of limitations. Additionally, International argues Carrier's motion for summary judgment against Memorial should be granted, thereby removing the basis for Carrier's claim against International.

### A. *Carrier's Motion: Statute of Limitations*

Carrier contends that Memorial's breach of warranty claim is barred by K.S.A. 84–2–725. K.S.A. 84–2–725 is the statute of limitations applicable to sales contracts. In pertinent part, K.S.A. 84–2–725 provides as follows:

(1) *An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.* By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) *A cause of action accrues when the breach occurs,* regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(Emphasis added).

In its response to Carrier's motion, Memorial does not dispute that K.S.A. 84–2–725 is

the relevant limitations period.[1] Instead, Memorial argues that Carrier tolled the running of K.S.A. 84–2–725 when it allegedly acknowledged its liability. Memorial also argues that Carrier is equitably estopped from asserting K.S.A. 84–2–725.

■ K.S.A. 84–2–725 bars a plaintiff from bringing a breach of warranty action where the plaintiff failed to bring that action within four years after it accrued. K.S.A. 84–2–725. An action for breach of warranty accrues when tender of delivery is made, with an exception where the contract explicitly extends to future performance of the goods. K.S.A. 84–2–725(2). Memorial has pointed to no evidence sufficient to establish the exception applies in the instant case. *See, e.g., K.S.A. 84–2–725, Kansas Comment (1983)* (noting that "when an express warranty explicitly extends to future performance, the cause of action accrues when the breach is or should have been discovered." Memorial has produced no evidence that Carrier provided an express warranty. Indeed, this action is for breach of an implied, not an express, warranty.); *Voth v. Chrysler Motor Corporation,* 218 Kan. 644, 545 P.2d 371 (1976) (applying the exception). Thus, for the purposes of K.S.A. 84–2–725, Memorial's cause of action accrued when tender of delivery was made.

■ Where delivery is the seller's last contact with the goods, tender of delivery is made, and the statute begins to run, when the goods are delivered. *See, e.g., Fordyce Concrete, Inc. v. Mack Trucks, Inc.,* 535 F.Supp. 118 (D.Kan.1982); *Dowling v. Southwestern Porcelain, Inc.,* 237 Kan. 536, 701 P.2d 954, 960 (1985). Where the goods are to be installed by the seller, the statute does not begin to run until the installation is complete. *Dowling,* 701 P.2d at 959, 960; *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 531 P.2d 41, 47 (1975). It is unclear when the HVAC units were delivered. It is also unclear whether Memorial can trace a duty to install back through the general contractor and distributor to Carrier. However, it is clear when Memorial's renova-

tion project, in which the installation of the HVAC units was an integral part, was completed. Memorial concedes that its renovation project was completed in or about November of 1986. Memorial further concedes that it "purchased" the HVAC units no later than January 1, 1987. Although it appears the units were installed in or about November of 1986, and it is unclear whether the obligation to install the units can be traced to Carrier, the court, giving Memorial the benefit of the doubt, finds that tender of delivery was made on January 1, 1987. Therefore, pursuant to K.S.A. 84–2–725, Memorial's breach of warranty action must have been filed no later than January 1, 1991. Memorial filed its claim on April 15, 1992.

Memorial responds that its action is not barred because (1) Carrier tolled the statute by acknowledging liability and (2) Carrier is equitably estopped from asserting the statute.

■ Memorial's first argument is that K.S.A. 60–520 tolls K.S.A. 84–2–725. In pertinent part, K.S.A. 60–520 provides as follows:

(a) *Effect.* In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing signed by the party to be charged thereby.

(Emphasis added).

Although Memorial concedes it had no written or oral agreement with Carrier, Memorial alleges that Carrier acted through GH & C and Powell Brothers. Memorial argues that actions and representations made by GH & C and Powell Brothers after January 1, 1987, should be attributed to Carrier. Memorial contends that these actions and representations constitute a "part performance"

---

1. This dispute arises out of a transaction in goods: the sale of the HVAC units. Memorial makes a claim for breach of K.S.A. 84–2–315: the implied warranty of fitness for a particular purpose.

tantamount to an acknowledgment of liability within the meaning of K.S.A. 60–520. Therefore, Memorial concludes that K.S.A. 60–520 tolled the running of K.S.A. 84–2–725.

■ In a contract action, K.S.A. 60–520 tolls the running of a limitations period where (1) an acknowledgment of liability has been made and (2) the acknowledgment is in writing and signed by the party to be bound.[2] In the instant case, there is no writing signed by Carrier in which Carrier acknowledges liability.

Memorial seems to argue that *Hustead v. Bendix Corp.*, 233 Kan. 870, 666 P.2d 1175 (1983), establishes an exception to the writing requirement of K.S.A. 60–520. In *Hustead*, plaintiffs claimed that an insurance company's part payment constituted an acknowledgment of liability which could be attributed to defendants, the company's insureds. The Kansas Supreme Court explained that a part payment is an executed acknowledgment which requires no writing to establish it. Specifically, the court wrote as follows:

> The requirement of a written acknowledgment or promise in K.S.A. 60–520 pertains only to situations involving *acknowledgment* of an existing liability or a *promise* to pay the same. A part payment speaks for itself, and, when a part payment is made in a contract case, the provisions of K.S.A. 60–520 come into play, having the effect of tolling the statute of limitations.

Memorial argues that *Hustead* requires the court to reject Carrier's limitations defense. Memorial's argument is based on the following assertions: (1) the repairs and representations (the "part performance") made by GH & C and Powell Brothers amount to part payments; and (2) these repairs and representations (the "part performance") can be attributed to Carrier because GH & C and Powell Brothers were Carrier's agents.

Plaintiffs in *Hustead* made an argument somewhat similar to that made by Memorial here. The *Hustead* plaintiffs argued, as Memorial argues, that actions taken by a third party should constitute an acknowledgment of liability attributable to defendant. In *Hustead*, the Kansas Supreme Court refused to hold the insureds responsible for the part payments made by the insurance company because there remained a genuine issue as to whether the company was an agent of the insureds. In the instant case, Memorial repeatedly asserts that Carrier is bound by the actions and representations of GH & C and Powell Brothers. However, Memorial never points to evidence adequate to support its bald assertions. Memorial does not produce, or even allude to, evidence sufficient to establish that Carrier could be bound by the actions of GH & C or Powell Brothers.

■ In the pretrial order, Memorial alleges that GH & C and Powell Brothers were Carrier's agents. Accordingly, in its response to Carrier's motion for summary judgment, Memorial contends GH & C and Powell Brothers had the authority to bind, and actually did bind, Carrier by their "part performance." As the party asserting that an agency relationship existed, Memorial has the burden of establishing its existence by clear and satisfactory evidence. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 401 (10th Cir.1986); *Cattle Finance Co. v. Boedery, Inc.*, 795 F.Supp. 362, 367 (D.Kan. 1992); *Highland Lumber Company, Inc. v. Knudson*, 219 Kan. 366, 548 P.2d 719, 722 (1976); *Rodgers v. Arapahoe Pipe Line Co.*, 185 Kan. 424, 345 P.2d 702, 707 (1959). Whether there is any competent evidence reasonably tending to show an agency relationship is a question of law for the court. *Turner and Boisseau, Chtd. v. Marshall Adjusting Corp.*, 775 F.Supp. 372, 378 (D.Kan. 1991); *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 827 P.2d 24, 31 (1992); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 710 P.2d 1297, 1303 (1985).

After examining the parties' memoranda and attachments, the court finds Memorial has pointed the court to no evidence in the

---

**2.** The Kansas Supreme Court has explained that "[a]n acknowledgement which will remove the bar of the statute of limitations must be distinct, unequivocal, and without qualification, and nothing less than a direct admission of a present existing liability is sufficient." *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102, 1107 (1978). *See also Dechand Roofing & Supply Co. v. Schumaker*, 174 Kan. 82, 254 P.2d 326, 328 (1953).

record sufficient to support its repeated assertions that GH & C and Powell Brother were Carrier's agents. An agency relationship does not exist merely "because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem rational and probable...." *In re Branding Iron*, 798 F.2d at 401 (quoting *Highland Lumber*, 548 P.2d at 723) (*quoting Shugar v. Antrim*, 177 Kan. 70, 276 P.2d 372, 375 (1954)). *See also Professional Lens*, 710 P.2d at 1303 (writing that "[t]he fact that a retail commercial enterprise offers for sale a particular product does not indicate that the retailer is the agent of the manufacturer").

In short, Memorial's first argument is that Carrier's acknowledgement of liability, via GH & C and Powell Brothers' "part performance," tolled K.S.A. 84–2–725. There is no evidence Carrier gave any assurances directly to Memorial. Indeed, Memorial concedes it had no written or oral agreement with Carrier. Instead, Memorial asserts that GH & C and Powell Brothers were Carrier's agents and, therefore, their "part performance" constitutes an acknowledgment of liability by Carrier. However, Memorial points to no evidence sufficient to support its agency argument. The court finds there is no basis in the record which supports Memorial's K.S.A. 60–520 argument. Accordingly, the court rejects Memorial's first argument.

■ Memorial's second argument is that under Kansas law Carrier is equitably estopped from asserting K.S.A. 84–2–725. "The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon." *Hustead*, 666 P.2d at 1178. The doctrine is applicable to K.S.A. 84–2–725. *Zurn Constructors, Inc. v.*

*B.F. Goodrich Co.*, 746 F.Supp. 1051, 1056–1057 (D.Kan.1990).

■ Under Kansas law, equitable estoppel applies if Carrier induced Memorial to delay the filing of its action either through affirmative acts or through silence concerning material facts when under an affirmative duty to speak. *Cf. Id.; Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1159 (D.Kan.1990); *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964). Actual fraud is not required. *Zurn*, 746 F.Supp. at 1056. However, Memorial must show that Carrier engaged in some "inequitable" conduct. *Church Mutual Insurance Company v. Rison*, 16 Kan.App.2d 315, 823 P.2d 209, 212 (1991) (citing *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978)).

■ Memorial points to the actions and representations of GH & C and Powell Brothers to show Carrier's inequitable conduct. Again, however, Memorial relies on mere assertions with no adequate basis in the record. The record does not indicate that Memorial ever had any contact with Carrier. Nor does the record support Memorial's agency argument. Memorial points to nothing in the record sufficient to establish any inequitable conduct by either Carrier or an agent of Carrier.[3] In short, Memorial has provided no facts that would indicate Carrier in any way acted to induce Memorial to delay the filing of its action. Since Memorial has failed to point to any evidence adequate to show Carrier induced Memorial to delay the filing of its action, the court rejects Memorial's equitable estoppel argument.

In summary, the applicable statute of limitations, K.S.A. 84–2–725, requires an aggrieved party to bring its action within four years of the date on which it accrued. Memorial filed its breach of warranty action more than four years after the cause of action accrued. The statute of limitations, K.S.A. 84–2–725, was not tolled by K.S.A. 60–520. Carrier is not equitably estopped from asserting the statute of limitations. Therefore, the court finds that Memorial's claim

---

**3.** Memorial places great emphasis on the repairs made during the four year period. However, efforts to repair, without more, do not rise to the level of inequitable conduct. *See, e.g., Winchester*

*v. Lester's of Minnesota, Inc.*, 983 F.2d 992, 994 (10th Cir.1993); *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936, 939–940 (1980).

for breach of the K.S.A. 84–2–315 implied warranty of fitness for a particular purpose is barred by K.S.A. 84–2–725.

### B. *Carrier's Motion: The Remaining Defenses*

K.S.A. 84–2–725 bars Memorial's claim for breach of the implied warranty of fitness for a particular purpose. Thus, it is unnecessary to reach Carrier's privity of contract or real party in interest arguments.

### C. *International's Motion*

The court has granted Carrier summary judgment on Memorial's claim. There is no longer any foundation for Carrier's indemnity claim. Therefore, the court denies International's motion as moot.

## V. *CONCLUSION*

After examining the memoranda and supporting attachments submitted by the parties, and for the reasons set forth in this Memorandum and Order, the court grants Carrier's motion (Doc. 56) and denies International's motion (Doc. 58) as moot.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant and third-party plaintiff Carrier's motion for summary judgment (Doc. 56) is granted.

**IT IS FURTHER ORDERED** that third-party defendant International's motion for summary judgment (Doc. 58) is denied as moot.